IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY M. MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV581 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jeffrey M. Manning ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") in January 2014, alleging a disability onset date of April 7, 2010. (Tr. at 17, 209-18.)[1] His applications were denied initially (Tr. at 70-100, 132-39) and upon reconsideration (Tr. at 101-31, 147-51, 155-58). Thereafter, Plaintiff

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 153-54.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on January 7, 2015. (Tr. at 17.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 29-30). On May 18, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." <u>Hines</u>, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.

## III.   <u>DISCUSSION</u>

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. at 19.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "Degenerative disc disease, hypertension, anxiety disorder, personality disorder and a mood disorder." (<u>Id</u>.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 23-24.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following additional restrictions:

> he is limited to frequent handling and fingering bilaterally; frequent reaching bilaterally; can occasionally climb ladders and scaffolds; frequently climb stairs

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." <u>Hines</u>, 453 F.3d at 562-63.

5

and can frequent [sic] balance, stoop, crouch and crawl; limited to no concentrated exposure to hazards, dangerous moving machinery and unprotected heights, and limited to unskilled work in a job with no more than occasional public contact. Also must be afforded a sit/stand option at one hour intervals.

(Tr. at 25.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 28.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 28-29.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 29-30.)

Plaintiff now argues that the ALJ erred in formulating his RFC with respect to his mental impairments. Specifically, he contends that the ALJ (1) failed to perform a function-by-function analysis and explanation of the non-exertional functions associated with Plaintiff's mental impairments, as required by Social Security Ruling 96-8p ("SSR 96-8p") and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and (2) failed to include mental RFC limitations consistent with the medical opinions to which he gave great weight. Plaintiff also raises a separate claim contending that the ALJ failed to provide sufficient reasons for making his credibility determination. After careful consideration of the record, the Court agrees that the ALJ's failure to comply with Mascio in formulating Plaintiff's mental RFC requires remand. In light of that determination, set out below, the Court need not reach Plaintiff's separate claim regarding the ALJ's credibility determination.

In this case, with respect to Plaintiff's mental impairments, Plaintiff presented the medical records and opinion of his treating physician, Dr. Jill Thompson. Dr. Thompson

began treating Plaintiff on April 7, 2010, and the treatment notes from that date reflect that Plaintiff was in a motor vehicle accident 6 weeks earlier, on February 22, 2010, resulting in physical injuries to his neck and back, as well as headaches, short-term memory loss, confusion, and problems focusing and concentrating. (Tr. at 318.) Dr. Thompson also noted a prior diagnosis of posttraumatic stress disorder exacerbated by the motor vehicle accident. (Tr. at 319.) In a subsequent visit on June 2, 2010, Dr. Thompson noted her impression that Plaintiff had sustained a traumatic brain injury and had developed symptoms of post concussive syndrome. (Id. at 324.) On September 8, 2010, Dr. Thompson signed an opinion letter, noting that as a result of the motor vehicle accident in February 2010, Plaintiff suffered a traumatic brain injury, resulting in short term memory loss, limited concentration and focus, severe migraine headaches, insomnia, and confusion. (Tr. at 322.) She further noted that traumatic brain injuries "are known to persist for up to a year if minor, and longer if more serious," and that Plaintiff "will likely require ongoing cognitive therapy in order to improve his [short term memory loss] and lack of concentration or focus." (Tr. at 322.) Dr. Thompson opined that until there was improvement in his cognitive functioning, it was doubtful that Plaintiff could perform any meaningful employment. (Id.)

Soon thereafter, on December 15, 2010, Plaintiff underwent a consultative psychological examination by Dr. Morris Britt for evaluation of his mental status. (Tr. at 346-51.) Dr. Britt performed several psychological tests, including the Wechsler Memory Scale and the Bender Gestalt. On the Bender Gestalt, Plaintiff showed "directional confusion, simplification, and loss of Gestalt." On the Wechsler Memory Scale, Plaintiff generally scored below the tenth percentile, and his scores indicated a cognitive disorder that "appears to be

7

more of dementia." (Tr. at 350-51.)  Dr. Britt noted a diagnosis of pain disorder, dementia due to closed head injury, mild, adjustment disorder with depressed mood, and the need to rule out dependent personality disorder.  He concluded that Plaintiff's

> ability to perform simple routine repetitive tasks is limited due to his pain.  It is felt that this is genuine because he does frequently ask to stand and walks around the house trying to shake out the pain. . . .  His interaction with peers and coworkers is such that he is withdrawn and is very much a loner.  His response to supervision is such that he would try.  He has no problems with basic ambulation and communication.  He would not be able to perform very well, however.  His concentration, persistence, and pace is somewhat compromised.

(Tr. at 351.)  Dr. Britt also noted that Plaintiff "is only marginally capable of handling benefits in his own best interest."  (Id.)

Plaintiff continued his treatment with Dr. Thompson, and subsequently underwent a second psychological consultative examination on April 9, 2014, with Dr. Walter McNulty.  (Tr. at 421-26.)  In that evaluation, Dr. McNulty noted diagnoses of posttraumatic stress disorder and the need to rule out a cognitive disorder related to a reported history of closed head injury.  In an opinion that the ALJ accorded "great weight," Dr. McNulty concluded as follows:

> Results of the evaluation were consistent with the presenting problem of posttraumatic stress disorder.  Mr. Manning reports symptoms of posttraumatic stress disorder secondary to childhood abuse.  He describes memory difficulties secondary to a history of concussions.  While Mr. Manning did present with some slowed cognitive abilities and memory difficulties during the interview, it is unclear exactly what is responsible for these difficulties.  Previous psychological evaluation concluded with diminished memory functioning and a diagnosis of dementia due to closed head injury, mild.  Mr. Manning's symptoms could also be influenced by the medication he is prescribed.  It is likely that both factors play a part in his memory and exhibited concentration difficulties.  The claimant's presentation and history were also suggestive of an underlying personality disorder.  Mr. Manning reports that he has been tried on various psychotropic medications in the past, but the only medication that works for

8

him is "Xanax." Apparently, the pain medication he is prescribed is also helpful. Mr. Manning reports that he has been prescribed psychotropic medication by his primary care physician for the last four years. Overall, the claimant's symptoms appear a [sic] moderate impact on his psychosocial functioning.

In a work situation, it is expected that Mr. Manning would have some difficulty understanding, retaining, and following instructions due to problems with attention and concentration. The claimant appears able to perform manual tasks, although his performance would be negatively impacted by his reports of neck and low back pain. His motivation is mildly impaired. Mr. Manning's ability to relate to coworkers and supervisors is moderately impaired. He is likely to appear negative to others.

He is likely to be argumentative. He reports that he finds it difficult to get close to others and he has a tendency to feel paranoid around others. Mr. Manning's ability to tolerate stress is moderately impaired. His ability to tolerate the stress and pressures associated with day-to-day work activity are moderately impaired. It is expected that Mr. Manning could manage benefits in his own behalf if awarded.

(Tr. at 425-26.)

Plaintiff's treating physician, Dr. Thompson, subsequently provided an opinion letter dated July 8, 2014, noting that Plaintiff suffered from chronic post-concussive syndrome, involving frequent headaches, insomnia, exacerbation of pre-existing post-traumatic stress disorder, irritability and marked moodiness. (Tr. at 297.) Dr. Thompson further noted that Plaintiff suffers from cognitive impairment, "which includes short-term memory loss, difficulty with concentration and focus, word blocking, inability to follow the thread of a conversation and losing things frequently." (Id.) Plaintiff continued his treatment with Dr. Thompson, and the treatment notes reflect ongoing cognitive difficulties. (Tr. at 442-43, 444-45, 446-47, 490, 491.)

In considering the evidence of Plaintiff's mental impairments, the ALJ concluded that Plaintiff suffered from anxiety disorder, personality disorder and a mood disorder. (Tr. at 19.)

9

The ALJ further concluded that Plaintiff suffered from mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 23-34.) The ALJ then formulated Plaintiff's RFC as "limited to unskilled work in a job with no more than occasional public contact." (Tr. at 25.) The hypothetical question posed to the vocational expert at the hearing likewise limited Plaintiff "to unskilled work and a job with no more than occasional public contact." (Tr. at 61.) No other non-exertional mental limitations were included in the RFC. Plaintiff contends that this RFC failed to specifically address each of Plaintiff's functional limitations and failed to account for the limitations provided in the medical opinions that the ALJ gave great weight.

In Mascio, the Fourth Circuit held that, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636. This holding clarifies the application of SSR 96-8p, which

> instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work. . . ." Id. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

Id. In terms of mental abilities, relevant functions include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. §§ 404.1945(c) and 416.945(c).

As the Fourth Circuit recently noted in Monroe v. Colvin, __ F.3d __, 2016 WL 3349355 (4th Cir. 2016), a RFC must properly account for *all* of a claimant's functional limitations before it can serve as a basis for vocational expert testimony at steps four and five of the sequential analysis. 2016 WL 3349355, at *10 (citing Hines, 453 F.3d at 566) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." (alteration and internal quotation marks omitted))). Thus, the ALJ must consider all of the "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work. Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning [Plaintiff's] ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy." Monroe, 2016 WL 3349355, at *10 (citing Mascio, 780 F.3d at 636).

Here, the ALJ addressed Plaintiff's mental limitations by limiting him to unskilled work with no more than occasional public contact. In considering the RFC, the Court notes that in his discussion, it appears that the ALJ may have intended to equate "unskilled" work in the RFC with a limitation to "simple, routine, repetitive tasks." However, "this Court has specifically held that simple, routine work is not synonymous with unskilled work." Straughn v. Colvin, No. 1:14CV200, 2015 WL 4414275, at *4 (M.D.N.C. July 20, 2015); see, e.g., Boler v. Colvin, No. 1:10CV451, 2013 WL 5423647, at *4 (M.D.N.C. Sept. 26, 2013) ("[I]t is clear that 'simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work' in general. . . . Accordingly, whether or not unskilled work squares with a

11

claimant's particular mental limitations presents a fact-specific determination."); McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at *7 (M.D.N.C. Jan. 4, 2012); Hayes v. Colvin, No. 1:10CV379, 2013 WL 2456111, *7 (M.D.N.C. June 6, 2013); see also Walls v. Astrue, No. 1:11CV318, 2013 WL 954361, at *4 (W.D.N.C. Feb. 22, 2013) adopted in 2013 WL 951583, at *1 (W.D.N.C. Mar. 12, 2013); Powell v. Astrue, No. 6:09–cv–0900–JFK–WMC, 2010 WL 3168308, at *16 (D.S.C. May 4, 2010) adopted in 2010 WL 3168310, at *3–4 (D.S.C. Aug. 10, 2010); Teeter v. Astrue, No. 3:12–CV–190–GCM, 2012 WL 5405531, at *2–3 (W.D.N.C. Nov. 6, 2012); Vuxta v. Comm'r of Soc. Sec., 194 Fed. App'x 874, 878 (11th Cir. 2006); Frye v. Astrue, No. 1:11–CV–1019, 2012 WL 1831548, at *23 (N.D. Ohio Apr. 9, 2012) ("This Court agrees that the set of jobs that comprise the category of 'unskilled' jobs are not identical to the set of jobs that comprise the category of 'simple, routine' jobs and that not every job that is 'unskilled' is also 'simple, routine and repetitive.' ") adopted in 2012 WL 1831537, at *1 (N.D. Ohio May 18, 2012)); Lyles v. Colvin, 1:14-2042-RMG, 2015 WL 1931398, at *16 (D.S.C. Apr. 28, 2015) ("The undersigned recommends the court find the VE's testimony does not constitute substantial evidence in support of the Commissioner's decision. The ALJ neglected to include a limitation to simple, routine, and repetitive work in the hypothetical question posed to the VE, but he included those limitations in his assessment of Plaintiff's RFC and relied on the jobs identified by the VE to the incomplete hypothetical. . . . Although the Commissioner argues the jobs identified by the VE would allow for the restriction to simple, routine, and repetitive work, that conclusion is not apparent from the administrative record.").

As this Court previously explained in McClendon, 2012 WL 13525, at *7,

> the ALJ appears to state that unskilled work is a subset (meaning greater limitations) than simple, routine, repetitive tasks. This is an error of reasoning.

Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85–15, Titles II and XVI: Capability To Do Other Work–The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments ("SSR 85–15"). (Tr. at 18.) Contrary to the ALJ's finding, simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work.

Thus, in the present case, the ALJ's RFC determination and hypothetical question limiting Plaintiff to "unskilled" work did not even include the limitation to "simple, routine, repetitive" tasks that the ALJ apparently intended. Cf. Walls v. Astrue, No. 1:11CV318, 2013 WL 954361, at *4 (W.D.N.C. Feb. 22, 2013) ("Moreover, it is not even clear from the decision whether the ALJ limited Plaintiff to simple, routine, repetitive, tasks because the specific findings for the ALJ are silent as to such limitations. The only limitations imposed by the ALJ was to limit Plaintiff to unskilled sedentary work. The ALJ's specific RFC determination did not refer to or incorporate limitations discussed in the body of the decision. Although the ALJ seemed to equate the two as equal in his discussion of Plaintiff's RFC, as other Courts in this Circuit have explained, 'simple, routine, repetitive work is a narrower category (meaning greater limitations) that [sic] unskilled work.' . . . It is not clear from the decision whether the ALJ intended to limit Plaintiff only to unskilled work as stated in his RFC finding, or whether the ALJ intended to restrict Plaintiff to a more specific subset of unskilled work, i.e. unskilled work limited to performing simple, routine, repetitive tasks. . . . Upon a review of the evidence in the record and the decision of the ALJ, the Court finds that the ALJ's mental RFC

13

determination is not supported by substantial evidence in the record and remand is required." (internal citations omitted)).

Moreover, even if the RFC could fairly be read to limit Plaintiff to "simple, routine, repetitive tasks," with "no more than occasional public contact," the RFC does not address the specific limitations found by the ALJ with regard to Plaintiff's moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit also addressed the question of whether and how moderate limitations in concentration, persistence, or pace found at step three must be accounted for in the RFC assessment. 780 F.3d at 638. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." The Fourth Circuit further noted that "[p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order." Id. (internal citation omitted).

In the present case, as in Mascio, the ALJ found at step three that Plaintiff has moderate difficulties in concentration, persistence, or pace. (Tr. at 24.) However, the mental restrictions in Plaintiff's RFC include nothing beyond a limitation to "unskilled work with no more than

14

occasional public contact."[4] (Tr. at 25.) Nevertheless, Defendant contends that "the ALJ provided sufficient explanation for this Court to conduct a meaningful review of his decision because he comprehensively discussed the evidence supporting the mental limitations included in the RFC finding and hypothetical question to the VE." (Def.'s Br. [Doc. #12] at 8.)

Defendant correctly asserts that remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. See Boyet v. Colvin, 1:14CV762, 2016 WL 614708, at *6 (M.D.N.C. Feb. 16, 2016); Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *5-6 (W.D.N.C. Aug. 25, 2015); see also Walker v. Colvin, No. 6:14-cv-00025, 2015 WL 5138281, at *11 (W.D. Va. Aug. 31, 2015); Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *3-4 (W.D. Va. Aug. 20, 2015). As the Western District of Virginia explained in Jones,

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

2015 WL 5056784, at *10-12. However, this exception proves inapplicable to the present case. Here, the explanation in question reads as follows:

> With regard to the claimant's mental impairments, and the allegations of slowed cognitive abilities, the restriction to simple, routine, repetitive tasks of unskilled work adequately addresses his mental health limitations. The medical evidence

---

[4] The public contact limitation addresses Plaintiff's moderate difficulties in social functioning, rather than the concentration problems now at issue. (See Tr. at 24, 27.)

15

> of record and reports of functioning in the file support a conclusion that the claimant is capable of understanding, remembering, and carrying out simple instructions. While the claimant has moderate limitations in his social functioning and concentration, persistence or pace, as I noted above . . . there is no evidence that his cognition and state of mind are so seriously impaired as to preclude the performance of simple, routine, repetitive tasks.

(Tr. at 27.)

The ALJ's decision then sets out the opinion evidence underlying his mental findings, but does not explain how the limitation to simple, routine, repetitive tasks would address the evidence that Plaintiff's concentration, persistence, and pace are impaired. Indeed, the analysis is conclusory and circular: according to the ALJ, the restriction to simple, routine, repetitive tasks addresses Plaintiff's mental health limitations because Plaintiff's mental health limitations do not preclude the performance of simple, routine, repetitive tasks. As in Mascio, by omitting any reference to Plaintiff's ability to stay on task from his RFC, without adequate explanation, the ALJ failed to include an adequate function-by-function analysis to enable review.

Similarly, with respect to social functioning and interaction with co-workers and supervisors, the ALJ found that Plaintiff had moderate difficulties. The ALJ specifically recounted Dr. McNulty's conclusions that Plaintiff's "ability to relate to coworkers and supervisors is moderately impaired and that his ability to tolerate the stress and pressures associated with day-to-day work activity are moderately impaired." (Tr. at 27 (citing Tr. at 425-26.)) Nevertheless, the ALJ failed to include any limitations reflecting these functional restrictions in the RFC or account for their omission. The ALJ limited Plaintiff to "no more than occasional public contact," but it is not clear how limits on Plaintiff's contact with the general public would address his inability to relate to co-workers and supervisors, nor is it clear

16

how this limitation addressed Plaintiff's impaired ability to tolerate the stress and pressures associated with day-to-day work activity.

Finally, even if the Court could conclude that the narrative provided by the ALJ was sufficient to at least generally address the reasons for choosing the RFC, Plaintiff raises the additional concern that the RFC does not address limitations that were recognized in medical opinions that the ALJ gave great weight. In particular, as noted above, the ALJ assigned great weight to the opinion of consultative psychologist Dr. Walter McNulty, who posited on April 22, 2014 that Plaintiff demonstrated "slowed cognitive abilities and memory difficulties," and "would have difficulty understanding, retaining, and following instructions due to problems with attention and concentration." (Tr. at 27, 425.) Dr. McNulty concluded that Plaintiff "appears able to perform manual tasks, although his performance would be negatively impacted by his reports of neck and low back pain." (Id.) After giving this opinion great weight, the ALJ next assigned the opinion of Dr. Morris Britt, another psychological examiner, "some weight," although his reasons for doing so remain unclear. (Tr. at 27.) Dr. Britt found on December 22, 2010 that Plaintiff's "concentration, persistence, and pace is somewhat compromised," and that his "ability to perform simple routine repetitive tasks is limited due to his pain." (Tr. at 27, 351.) Significantly, Dr. Britt's findings include Plaintiff's testing results on the Wechsler Memory Scale, on which all but one of Plaintiff's scores fell well below the tenth percentile. (Tr. at 350.) Dr. Britt attributed Plaintiff's memory difficulties to dementia due to his closed head injury rather than a cognitive disorder, while Dr. McNulty opined that Plaintiff's medications and dementia both likely played a role. (Tr. at 22, 351, 425.) Notably, neither provider indicated the exact extent to which Plaintiff's concentration, persistence, and

17

pace is compromised, nor did they opine that he could perform simple, routine, repetitive tasks or unskilled work. In fact, as set out above, Dr. Britt specifically determined that Plaintiff's ability to perform even simple tasks was *limited* due to pain. (Tr. at 27, 351.) The ALJ gave this opinion "some weight" and specifically noted that, "I agree that the claimant has the ability to perform simple, routine repetitive tasks that which [sic] might be limited due to his reports of pain." (Id. at 27.) Although the ALJ's wording is not completely clear, it appears that the ALJ agreed with Dr. Britt that even Plaintiff's ability to perform simple, routine, repetitive tasks was limited due to pain. It is not clear how the ALJ reconciled that conclusion with the RFC adopted in this case, nor is it clear how the full opinion of Dr. McNulty, which was given great weight, was addressed in the RFC. Thus, the ALJ failed to adequately weigh or clearly address the opinions of Drs. Britt and McNulty in the formulation of the RFC.[5]

Ultimately, for all of the reasons set out above, the Court concludes that the ALJ has failed to build an adequate, logical bridge from the evidence he relied upon to the ultimate RFC determination. See Monroe v. Colvin, 2016 WL 3349355, *10 (holding that an ALJ "must

---

[5] The Court notes that with respect to the State agency assessments, on April 22, 2014, Arne Newman, Ph.D, found Plaintiff "capable of at least [simple, routine, repetitive tasks] if motivated to do so." (Tr. at 83.) However, the narrative provided by Dr. Newman further limited Plaintiff to "very short and simple instructions" and noted that Plaintiff was not significantly limited in interacting with the general public, but was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 81, 82.) On reconsideration, more areas of moderate limitation were noted. (Tr. at 113-14.) It is not clear how these limitations translate into the RFC that was adopted. In addition, it does not appear that the State agency assessments included or addressed the 2010 opinions of Dr. Thompson or Dr. Britt. Indeed, the State agency assessment for Plaintiff's DIB claim noted no evidence of mental impairments prior to the March 31, 2012 date-last-insured. (Tr. at 93.) Moreover, the ALJ gave "substantial weight" to the findings of the State agency medical consultants, but he then proceeded to note that Plaintiff is *more limited* than specified in those assessments, without explaining the nature or extent of any additional limitations. This lack of explanation further frustrates judicial review.

build an accurate and logical bridge from the evidence to his conclusion." (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).[6]

---

[6] Defendant contends that the record nevertheless supports the ALJ's determination because, *inter alia*, the ALJ observed that the results of Plaintiff's brain MRI, performed in April 2010, were normal. However, the Court finds no medical determination in the record indicating that the type of post-concussive syndrome noted by Dr. Thompson, or the dementia or medication-related cognitive impairments noted by Dr. Britt and Dr. McNulty, would be visible on an MRI. Similarly Defendant notes that the ALJ observed that Plaintiff's mental impairments were treated conservatively, with Xanax and antipsychotic medications, and that his pain improved with pain medication. However, there is no indication of other available medications for the cognitive impairments addressed by Drs. Thompson, Britt, and McNulty. Defendant also notes that the ALJ further observed that Plaintiff "betrayed no evidence of a cognitive disorder while testifying at the hearing," and the ALJ rejected other evidence of Plaintiff's attention deficits and difficulty handling stress by noting that "the claimant was fully capable of answering all questions at the hearing as well as maintain attention without difficulty." (Tr. at 23, 24.) However, the Court notes that while the ALJ can consider observations at the hearing in making credibility determinations, the ALJ appeared to go further here by rejecting evidence based on the ALJ's own observations and conclusions regarding Plaintiff's ability to concentrate. See Harris v. Colvin, No. 3:14-cv-143-RJC, 2015 WL 4921180, at *3 (W.D.N.C. Aug. 18, 2015) ("At the administrative hearing, it is improper for the ALJ to reference and rely on his or her own observations in determining the claimant's mental and physical limitations." (citing Copeland v. Bowen, No. 88–2972, 1989 WL 90545, at *3 (4th Cir. Aug. 7, 1989)); Jenkins v. Bowen, 819 F.2d 1138 (table) (4th Cir. May 18, 1987) ("The ALJ is not a physician qualified to make such determinations. In addition to the obvious danger of unreliability, such an approach may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel." (internal citations and quotations omitted)); Parker v. Comm'r of Soc. Sec. No. SAG-12-1223, 2013 WL 1338418, at *2 (D. Md. Mar. 29, 2013) ("The record demonstrated that two physicians had found Ms. Parker to have limitations in the area of concentration, persistence, or pace. The only contrary evidence was the ALJ's observation of Ms. Parker's ability to answer questions at the hearing, which lasted only approximately 25 minutes. Reliance on ALJ observation is disfavored under Fourth Circuit law, particularly in the absence of corroborating evidence."); Trudell ex rel. Bushong v. Apfel, 130 F. Supp. 2d 891 (E.D. Mich. 2001) ("The ALJ based his decision finding no marked impairment in concentration, persistence or pace on two factors: comments contained in a report from the Arnold Center on Aaron's progress during a one-week work evaluation program, and the ALJ's own observations and interpretation of Aaron's conduct at the hearing itself. . . . More importantly, however, the ALJ's observations are not a proper basis upon which to rest a factual conclusion in this case. In assessing the credibility of a witness, personal observations are certainly important. In fact, it is one of the reasons underlying the preference for live testimony. . . . However, the ALJ's reliance on his personal observation in this case was more akin to those of a medical or psychological expert assessing symptoms of a patient or examinee, and then drawing conclusions therefrom. Traditionally, conclusions of the sort made by the ALJ with respect to Aaron's behavior require that the observer establish some expertise by skill, knowledge, education, training or experience, which does not appear in this record. Further, the ALJ's reliance on his personal observation in this case is analogous to the so-called 'sit and squirm' test, a procedure that has been thoroughly discredited and which cannot serve as a basis for the rejection of a claimant's allegations of disability." (internal citations omitted)). The Court need not consider these issues further, given the ALJ's failure to adequately explain the mental RFC in this case using a function-by-function analysis with a sufficient explanation of the weight given to the medical evidence and how the impairments reflected in the evidence are addressed in the RFC, as set out above.

19

As such, remand is required.[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 15th day of August, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[7] In light of this determination, the Court does not reach Plaintiff's third claim, challenging the sufficiency of the ALJ's credibility determination. The Court does note that Defendant cites to "misrepresentations" by the Plaintiff, specifically noting that the medical record includes notations indicating that Plaintiff had previously been in the military and had worked as a tattoo artist. However, at the hearing, Plaintiff explained that it was his father who had been a Navy seal, and that Plaintiff had received medical treatment on various military bases in connection with his father's military service. Plaintiff also testified that it was his wife who was the tattoo artist, and that Plaintiff worked in the tattoo parlor taking phone calls, checking appointments, and getting supplies. At the hearing, Plaintiff explained that to the extent any doctor's note reflected his military service or his work as a tattoo artist, those were just confusions or misunderstandings as he was trying to tell the doctors about his father's military service and his work at the tattoo parlor with his wife. (Tr. at 35, 38, 50-52, 346). In any event, the Court need not further address Defendant's contentions, in light of the remand set out above.